**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **vs.** | ) | **DOCKET NO. 2:26-cr-00082-LEW** |
| | ) | |
| | ) | |
| | ) | |
| **JERONIMO MAVUNGO-RAYMOND** | ) | |

**DEFENDANT'S MOTION TO DISMISS THE SUPERSEDING INDICTMENT**

NOW COMES Defendant Jeronimo Mavungo-Raymond, by and through counsel, and respectfully moves this honorable Court to dismiss the Indictment against him with prejudice. In support thereof, the defense states as follows:

## RELEVANT BACKGROUND

### I. Immigration Case

Jeronimo is a citizen of Angola, who entered the United States in July 2022. (ECF No. 17) at 2. He left Angola following the deaths of his father, mother, and twin brother. *Id*. In February 2025, while residing in Maine, Jeronimo was arrested and detained by Immigration and Customs Enforcement (hereinafter "ICE"). *Nessinger v. Mavungo-Raymond*, 1:26-cv-00013-JJM-AEM (ECF No. 6). While initially detained in Maine, Jeronimo was subsequently transferred to the Wyatt Detention Facility in Central Falls, Rhode Island. *Id*.

After nearly 11 months in immigration detention, on January 26, 2026, Jeronimo, through immigration counsel, filed a petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. *See Id*.

On January 21, 2026, the United States District Court for the District of Rhode Island granted the petition and ordered Jeronimo's immediate release. *Id*. at 19.

## II. Arrest on Criminal Complaint, Release on Bond, and Transfer to Immigration Detention

On June 30, 2026, Jeronimo was charged by criminal Complaint with one Count of Access Device Fraud in violation of 18 U.S.C. § 1029(a)(2). (ECF No. 3). In connection with the Complaint, United States Magistrate Judge Wolf issued an arrest warrant, directing law enforcement to arrest Jeronimo and to bring him before a Magistrate Judge without unnecessary delay. (ECF No 15).

At approximately 08:35 am on July 1, 2026, Jeronimo was arrested in Bangor pursuant to the warrant. *Id*. Notwithstanding the warrant's express directive that he be brought before a Magistrate Judge without unnecessary delay and the provisional appointment of undersigned counsel, law enforcement did not immediately transport Jeronimo to Federal Court. Instead, following his arrest, Jeronimo was taken to the South Portland Police Department. Only after a nearly two-hour custodial interrogation was Jeronimo finally transported to the Federal Court. The Government moved for pretrial detention, and the defense requested scheduling of a detention hearing. (ECF No. 8).

On July 10, 2026, Jeronimo's detention hearing was held. (ECF No. 19). Following a contested hearing, the Court denied the Government's Motion for Detention and ordered Jeronimo released with conditions. *Id*. Among other conditions of release, the Court's Order required Jeronimo to appear in court as required and restricted his travel to the District of Maine, absent authorization from his supervising officer for a verified legal matter. *Id*.

Despite Judge Wolf's Order granting pretrial release, Jeronimo was not released from custody. Instead, he remained detained pursuant to an ICE detainer lodged on July 1, 2026 – the

same day as his arrest on the Complaint. Jeronimo was subsequently transferred out of state to the Strafford County Jail, where he was held in civil immigration detention.

### III. First Indictment

On July 23, 2026, the Government obtained an Indictment mirroring the charge in the Complaint. (ECF No. 35). On July 31, 2026, pursuant to a writ, Jeronimo was transported to the Federal Court for arraignment. (ECF No. 27). Following Jeronimo's entry of a not-guilty plea, the Court entered a procedural order assigning the case to the September 1, 2026, trial list. (ECF No. 28).

On August 7, 2026, the defense received an initial discovery production from the Government. Undersigned counsel was also advised that additional discovery would be forthcoming. In light of the anticipated additional production and the need for adequate time to review the discovery and prepare for trial, the defense moved on August 10, 2026, to continue Jeronimo's case to the October 5, 2026, trial list. (ECF No. 30). The Court granted the Motion and reset the case to the October 5, 2026, trial list. (ECF No. 31).

On August 31, 2026, undersigned counsel learned from Jeronimo's immigration counsel that he had been transferred from the Strafford County Jail and that his whereabouts were then unknown. On September 16, 2026, with the assistance of the Government, undersigned counsel learned that Jeronimo had been transferred to the Aurora Detention Center, in Aurora, Colorado. The facility is approximately 2,000 miles from the Court and undersigned counsel's office.[1]

---

[1] Google Maps, *Aurora Detention Cente*r, Google, https://www.google.com/maps (last accessed Oct. 30, 2026)

### IV. Superseding Indictment and Scheduling of Arraignment

On September 16, 2026, the Government sought and obtained a superseding Indictment. (ECF No. 35). In addition to the charge contained in the first Indictment, the Superseding Indictment charged Jeronimo with one count of Unlawful Use of Snap Benefit in violation 7 U.S.C. § 2024(b)(1) and one count of Identity Theft in violation of 18 U.S.C. § 1028(a)(7). *Id.* With respect to the new charges, according to the Indictment the alleged conduct occurred between October 20, 2023, and January 14, 2025. *Id.* Following the filing of the Superseding Indictment, Jeronimo's case was assigned to the November 1, 2026, trial list. (ECF No. 38).

Upon learning of the Superseding Indictment, undersigned counsel made multiple attempts to contact Jeronimo through the facility's designated legal telephone line.[2] Those efforts were unsuccessful. Unable to reach Jeronimo by telephone, undersigned counsel scheduled a video visit for the earliest available date and time: 4:00 p.m. on September 30, 2026.[3] Undersigned counsel then emailed the Court to request delay in scheduling of the arraignment by 13-days, to allow undersigned counsel to consult with Jeronimo and determine whether he wished to proceed with an in-person arraignment, waive arraignment, or to be arraigned via video. Immediately following the video conference, undersigned counsel informed the Court and the Government that Jeronimo wished to appear in person for his arraignment. The Court scheduled the arraignment for October 6, 2026. (ECF No. 39).

---

[2] When undersigned counsel called the phone would ring continuously with no answer or voicemail.

[3] Undersigned counsel sent an email requesting a meeting on September 17, 2026, and received a response on September 18, 2026. The earliest available date was September 28, 2026. However, due to the time difference in Colorado, the available visit time was outside of regular work hours when undersigned counsel has preexisting familial obligations. Thus earliest available time in which the facility and undersigned counsel was available was September 30, 2026, at 4pm EST.

## V. ICE'S Continuing Efforts to Remove Jeronimo[4]

[redacted]

[redacted]

[4] Undersigned counsel obtained the below information from Jeronimo, Immigration Counsel, and filings and supporting documentation from Immigration Counsel.

[redacted]

[redacted]

### VI. Jeronimo's Transfer Pursuant to a Writ

Following issuance of a writ, on October 1, 2026, the United States Marshals' Service advised the parties and the Court that it would require at least 30 days' notice to effectuate Jeronimo's transfer from Colorado to Maine. In response, the Government moved to continue the arraignment and initial appearance, requesting a 30-day continuance to accommodate the transfer. (ECF No. 41). The Court granted the request and continued Jeronimo's arraignment until October 30, 2026. (ECF. No. 43).

Meanwhile, on October 8, 2026, and October 22, 2026, undersigned counsel received additional discovery productions from the Government, including materials pertaining to the charges contained in the Superseding Indictment. Undersigned counsel did not immediately forward these materials to Jeronimo at the facility in Colorado, believing he was either in, or shortly would be, in transit to Maine.

On October 16, 2026, undersigned counsel contacted the United States Marshals to inquire about Jeronimo's location and was advised the transfer had not yet occurred. The same day, undersigned counsel attempted to contact Jeronimo at the Aurora Detention Facility by phone. While undersigned counsel was unable to reach Jeronimo by phone, undersigned counsel scheduled a video meeting with Jeronimo for October 27, 2026. [7]

On October 20, 2026, Jeronimo's immigration counsel filed another Petition for Writ of Habeas Corpus. *Mavungo-Raymond v. Baltazar et al*, 1:26-cv-05361-PAB (D. CO, 2026) (ECF No. 1). On October 21, 2026, undersigned counsel learned that the transfer process had

[7] While the facility had one video visit available on October 23, and two video visits available on October 26, due to the time change, the available visits were outside of regular work hours, during which time undersigned counsel has other familial obligations. As such the earliest available date and time was October 27, 2026.

commenced and that Jeronimo was currently at FCI Englewood, a Bureau of Prison facility in Littleton, Colorado.

On October 23, 2026, the parties received notification from the United States Marshals that Jeronimo would not be transported to Maine in time for his scheduled arraignment on October 30, 2026. According to the Marshals, Jeronimo's anticipated arrival in Maine was not expected until mid-to-late December. As of the date of this filing, Jeronimo's case remains on the November trial list, with jury selection scheduled to commence on November 2, 2026.

## ARGUMENT

The Bail Reform Act requires that once an individual is arrested for a federal crime, the determination as to whether an individual can be released or should remain detained pending trial is vested with the judicial officer, not the arresting officer or another jurisdiction. *United States v. Castillo*, 537 F. Supp. 3d 120, 125 (D. Mass. May 6, 2021). And while the Bail Reform Act contemplates that another jurisdiction or agency may detain a federal defendant, the exercise of that authority cannot be used to circumvent the criminal court's release determination or to interfere with the defendant's statutory and constitutional rights. *Id.* at 126-27; *United States v. Argueta-Espinoza*, No. 18MJ3133, 2018 WL 4492226, at *2 (D. Neb. Sept. 19, 2018) ("The fact that ICE will not agree or cannot be trusted to delay deportation—that separate agencies within the Executive Branch do not communicate and cooperate—cannot serve to deprive a defendant of his rights" under the Constitution.).

When an individual is unlawfully present in the United States, the United States' Executive branch has two options: "proceed administratively with deportation or defer removal for the [individual] to face criminal prosecution." *United States v. Resendiz-Guevara*, 145 F. Supp. 3d 1128, 1136 (M.D. Fla. Nov. 12, 2015) (citing *United States v. Santos-Flores*, 794 F.3d 1088, 1091

(9th Cir. 2015)). If the Government decides to pursue prosecution over deportation, “administrative deportation proceedings must take a backseat to court proceedings until the criminal prosecution comes to an end.” *Resendiz-Guevara*, 145 F. Supp. 3d at 1136 (quoting *United States v. Blas*, 2013 WL 5317228, at *3 (S.D. Ala. Sept. 20, 2013); *United States v. Parias*, 814 F.Supp.3d 1096, 1099-1100 (C.D. Cal. Dec. 27, 2025) (“The purpose of an ICE detainer is for arresting and removing the alien. Therefore, the government's decision to detain Mr. Parias pursuant to an ICE detainer indicates that the government had apparently reversed its priorities, choosing instead to seek Mr. Parias's forthwith removal.”) (internal citations and quotations omitted).

Where the Executive Branch’s actions interfere with the Court’s ability to administer the criminal proceeding or deprive a defendant of their statutory or constitutional rights, the Court has the power to craft an appropriate remedy. This includes dismissal. *Parias*, 814 F.Supp.3d at 1113 (“[i]f the government, by placing [defendant] in immigration detention or removing him, jeopardizes the district court's ability to try him, then the district court may craft an appropriate remedy.”) citing *Santos-Flores*, 794 F.3d at 1091);. *Castillo*, 537 F. Supp. 3d at 130 (dismissing case without prejudice where the Court found ICE’s removal of the defendant violated his constitutional rights and was in “in disregard of the Magistrate Judge's order that Defendant not leave the District of Massachusetts, and ignored this court's jurisdiction over the Defendant and this criminal prosecution.”); *United States v. Munoz-Garcia*, 455 F. Supp. 3d 915, 918 (D. Ariz. Apr. 21, 2020) (“dismissal of the indictment with prejudice was warranted because after Defendant was released pending trial under the Bail Reform Act, the Executive Branch was obliged to either abandon the criminal prosecution and proceed with removal, or stay removal and release the Defendant…By instead opting to proceed immediately with Defendant’s removal…the United

States government violated her statutory right to be released from custody under the Bail Reform Act, as well as her Sixth Amendment right to counsel."); *United States v. Lutz*, 2019 WL 5892827, *5 (D. Ariz. Nov. 12, 2019).

In this case, the Government initially chose to pursue the criminal prosecution rather than prioritize Jeronimo's removal. Following a contested detention hearing, Judge Wolf determined that Jeronimo did not present a sufficient risk of flight or danger to warrant pretrial detention and ordered him released. The Government took no steps to appeal or otherwise seek further review of Judge Wolf's order. *Castillo*, 537 F. Supp. 3d at 126 ("If the government disagreed with the Magistrate Judge's evaluation of flight risk and danger to the community, the proper step would have been for the government to appeal that decision."). Instead, the Government permitted ICE to take Jeronimo into immigration custody, thereby preventing his release under the conditions set by the Court. ICE, in contravention of Judge Wolf's Order requiring Jeronimo to remain in Maine and appear as required, instead transferred Jeronimo outside the District and approximately 2,000 miles from this Court.

While continuing its prosecution—including by convening an additional Grand Jury and obtaining a Superseding Indictment—the Government has, at the same time, made it virtually impossible for Jeronimo to communicate meaningfully with counsel, participate in the preparation of his defense, and appear in Court as required. The Government cannot shift the consequences of its own lack of coordination and competing priorities onto Jeronimo. Where the Government's actions have violated Jeronimo's constitutional rights and continue to impair his ability to participate in his defense, dismissal of the indictment is merited.

**I. The Government is Impermissibly Interfering with Jeronimo's Constitutional Right to Assistance of Counsel and a Fair Trial.**

"No person shall be … deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. *See Resendiz-Guevara*, 145 F. Supp. 3d at 1137 (quoting *United States v. Valenzuela–Bernal*, 458 U.S. 858, 872 (1982)) ("The Fifth Amendment right to due process guarantees that a criminal defendant will be treated with 'that fundamental fairness essential to the very concept of justice. In order to declare a denial of it we must find that the absence of that fairness fatally infected the trial; the acts complained of must be of such quality as necessarily prevents a fair trial.'"). Moreover, the right to due process, enshrined in the Fifth Amendment of the Constitution affords all criminal defendants the fair opportunity to prepare a defense.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. "The core of this right has historically been, and remains today, the opportunity for a defendant to consult with an attorney and to have him investigate the case and prepare a defense for trial." *Kansas v. Ventris*, 556 U.S. 586, 590, 129 (2009) (internal quotation marks omitted). Critically, "the assistance of counsel cannot be limited to participation in a trial[.]" *Maine v. Moulton*, 474 U.S. 159, 170(1985). Instead, "[t]he right attaches at or after the time that judicial proceedings have been initiated against [the defendant]," and "[o]nce the right attaches, the defendant is guaranteed counsel during any critical stage of the post attachment proceedings." *Betschart v. Oregon*, 103 F.4th 607, 619-620 (9th Cir. 2024) (internal quotation marks omitted).

Courts across the country have found removal and detention by ICE violated a defendant's Fifth and Sixth Amendment rights. For example, in *United States v. Castillo*, the defendant was indicted in the District of Massachusetts for Conspiracy to Distribute and Intent to Distribute Oxycodone. 537 F.Supp.3d at 122. While Mr. Castillo was granted pretrial release over the

Government's objection, he was transferred to ICE custody, and subsequently deported. *Id.* In *Castillo*, the Court dismissed the indictment, finding that the defendant's forced absence from the prosecuting district interfered with his ability to consult with counsel and prepare a defense in violation of the Sixth Amendment, and "necessarily prevents a fair trial" in violation of the Fifth Amendment. *Id.* at 128.

Similarly, in *United States v. Parias*, the defendant was charged with assaulting a federal officer following an altercation with federal agents attempting to execute an administrative arrest warrant. 814 F.Supp.3d at 1099-1100. Following a contested detention hearing and review of the release order, the Court ordered his release with a bond and conditions. *Id.* at 1100. Instead of release, Mr. Parias was transferred into ICE custody and subsequently relocated to a detention facility approximately two hours from defense counsel's office in downtown Los Angeles. *Id.* In addition to the travel distance, defense counsel encountered significant difficulties in setting up virtual visits. *Id.* at 1101-1102. In *Parias*, the Court found the "obstacles and roadblocks that ICE has put in place" preventing the defendant from meeting with his attorneys caused demonstrable prejudice or a substantial threat thereof, in violation of Mr. Parias's Sixth Amendment rights. *Id.* at 1107. *see also Lutz*, 2019 WL 5892827, at *5 (affirming dismissal of the indictment with prejudice where "ICE's removal of Defendant from this country is interfering with Defendant's Sixth Amendment right to consult with counsel, to review the evidence against him and to prepare a defense to the charge."); *United States v. Trujillo-Alvarez,* 900 F. Supp. 2d 1167, 1180 (D. Or. Oct. 29, 2017) (ICE custody deprives "court appointed counsel of the ability to meet and work to prepare for his defense at trial without undue inconvenience or hardship, thereby jeopardizing not only his statutory rights under the BRA, but also his rights under the Fifth, Sixth, and Eighth Amendments and under basic principles of fundamental fairness").

In this case, the Government's transfer of Jeronimo more than 2,000 miles from the prosecuting district has impaired both his ability to prepare a defense and receive the meaningful representation of counsel. As explained above, while Jeronimo has been made aware of the new charges against him contained in the Superseding Indictment, he has been unable to review any of the Government's evidence against and thus assist counsel in preparing for trial. Due to the substantial distance, undersigned counsel is unable to conduct any in person visits with Jeronimo. The only assured means of communication has been through video visitation, which requires multiple weeks to schedule. Adequate trial preparation requires the ability for regular and consistent communication. Undersigned counsel must have the ability to confer with Jeronimo about the wide spectrum of strategic and logistical decisions that come with a trial – some that are foreseeable, and others that only come up at the last minute. Such preparation is not possible under present circumstances.

[redacted]

Although undersigned counsel understands that Jeronimo is anticipated to be in the District of Maine come mid-to-late December, due to the on-going interference with counsel's ability to meet with Jeronimo and review discovery, it is unlikely the defense will be prepared to proceed to

trial in January. The Government, through its actions, has thus placed Jeronimo in the untenable position of having to give up his right to a speedy trial, to vindicate his right to a fair one.

## II. The Government is Violating Jeronimo's Constitutional Right to a Speedy Trial.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed." U.S. Const. amend. VI. While defendants have a statutory right to a speedy trial under the Speedy Trial Act, Sixth Amendment challenges are reviewed separately from the Speedy Trial Act. *United States v. Urizar Lopez*, 587 F. Supp. 3d 835, 843 (S.D. Iowa, Feb 23, 2022).

In determining whether a defendant's constitutional speedy trial rights have been violated, the Court looks to four factors: (1) the length of the delay; (2) the reason for the delay, including which party is more responsible, (3) whether the defendant asserted his right to a speedy trial, and (4) whether the defendant suffered prejudice as a result of the delay. *Doggett v. United States*, 505 U.S. 647, 651, (1992).

*a. Length of delay*

"[T]he particular protections of the speedy trial provision of the Sixth Amendment" are "engage[d]" with "either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge." *United States v. Marion,* 404 U.S. 307, 320 (1971). A delay exceeding one year is presumptively prejudicial. *Urizar Lopez*, 587 F. Supp. 3d at 843.

In this case, Jeronimo was arrested in July. While this has not yet reached the presumptively prejudicial threshold, the length of the delay in this case needs to evaluated in the complete context of circumstances. As discussed above, even if Jeronimo does arrive in Maine in

time for a January 4, 2027, jury selection, because of his multi-month long detention in a facility thousands of miles from the prosecuting district and inability to meet with counsel, the defense does not anticipate being prepared for trial in January. Instead, six months after his arrest, and four months after the Superseding Indictment will Jeronimo have the opportunity to begin the process of reviewing the voluminous discovery, meeting with his attorney, and preparing for trial. The defense respectfully submits that under these circumstances the first factor weighs in favor of Jeronimo.

*b. Reason for the delay*

The second factor – the reason for the delay – weighs in Jeronimo's favor. In August 2026, the defense sought a single 30-day continuance to allow adequate time to review discovery and prepare for trial. The subsequent delay is attributable to the Government. But for the Government's decision to transfer Jeronimo from the prosecuting district, Jeronimo could have proceeded with arraignment, consulted with counsel, reviewed discovery, and prepared for trial. Instead the Government's immigration enforcement actions has caused Jeronimo to miss two scheduled arraignment dates and denied him the opportunity to meaningfully participate in his defense, thereby delaying the trial for the foreseeable future. Accordingly, this factor is weighted heavily in Jeronimo's favor.

*c. Jeronimo's assertion of his right to a speedy trial.*

Although the defense previously requested a single 30-day continuance to allow adequate time to review discovery and prepare for trial, Jeronimo has not agreed to any subsequent continuances or requested that this case be removed from the trial list. He now also clearly asserts his right to a speedy trial.

*d. Jeronimo has suffered prejudice resulting from the delay.*

The Supreme Court has made clear that while prejudice is a factor to be considered, "affirmative proof of particularly prejudice is not essential to every speedy trial claim." *Doggett*, 505 U.S. at 655. Nonetheless, the defense submits that this delay has caused Jeronimo prejudice. While his pretrial incarceration is resulting from his immigration rather than criminal proceeding, undersigned counsel understands that the criminal charges remain the basis for ICE's renewed detention.

The prejudice in this case, however, extends beyond Jeronimo's detention. Count Two and Three of the Superseding Indictment contain allegations dating from October 2023. Moreover, there has already been significant passage of time since the conduct alleged in this case, and as such, there raises the real "possibility that [accused's] defense will be impaired by dimming memories and the loss of exculpatory evidence. *Id*. at 654. The continued postponement of Jeronimo's case only heightens that concern, particularly where Jeronimo remains unable to work with counsel to investigate the underlying allegations and identify potentially exculpatory evidence.

## III. The Court Should Dismiss the Indictment With Prejudice

The remedy for a violation of the Sixth Amendment right to a speedy trial is dismissal with prejudice. *Strunk v. United States*, 412 U.S. 434 (1973); *Urizar Lopez*, 587 F. Supp. 3d at 843. Further, courts have found dismissal with prejudice to be appropriate to remedy on-going violations of defendant's Fifth and Sixth Amendment right to counsel. *Lutz*, 2019 WL 5892827 at *5 ("Here, the prosecution's failure to coordinate with ICE has resulted in the violation of Defendant's rights. Dismissal of the indictment is appropriate under this Court's supervisory powers to remedy the ongoing violation of Defendant's Sixth Amendment rights. In order to promote respect for the BRA and to deter ICE and the U.S. Attorney's Office from continuing to

engage in turf battles in lieu of inter-agency cooperation, the Court agrees with Judge Macdonald that dismissal with prejudice is appropriate.).

The circumstances of this case similarly warrant dismissal with prejudice. The U.S. Attorney was aware of the ICE detainer at the time of Jeronimo's release. ICE, in turn, was aware of the criminal case in Maine – upon information and belief it predicated its detainer on the pending charges. Yet, neither agency took meaningful steps to coordinate its actions or address the resulting interference with Jeronimo's ability to participate in his defense. The predictable consequence has been the ongoing deprivation of Jeronimo's constitutional rights. *United States v. Boutin*, 269 F. Supp. 3d 24, 28-29 (E.D.NY. Dec. 20, 2017) ("DHS, under the auspices of ICE, apparently will deport an alien regardless of the resulting prejudice to criminal prosecutions. In doing so, DHS also purposefully contravenes the Bail Reform Act, which, in part, exists to protect a defendant's constitutional rights. The Court is gravely concerned by this apparent willingness to prejudice the interests of the people of the United States and the constitutional rights of the accused, with resulting waste of DOJ, court, and defense resources.").

The Government cannot pursue a criminal prosecution while also depriving Jeronimo a meaningful opportunity to consult with counsel, prepare a defense, and appear before this Court. Nor should Jeronimo be required to bear the consequences of the Government's failure to coordinate its actions through further delay, continued detention, or the denial of his constitutional rights. Under such circumstances, in light of the violation and continuing threat of violation of Jeronimo's rights, dismissal with prejudice is appropriate.

WHEREFORE, for the foregoing reasons, Jeronimo respectfully moves this Honorable Court to Dismiss the Superseding Indictment.

Dated October 30, 2026, in Portland Maine

*/s/ Grainne Dunne*_______
Grainne Dunne
Attorney for Defendant
Assistant Federal Defender
P.O. Box 595
Portland, Me 04112-0595
207-553-7070
FAX: 553-7017
grainne_dunne@fd.org

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

## CERTIFICATE OF SERVICE

I, Grainne Dunne, attorney for Jeronimo Mavungo-Raymond, hereby certify that I have served electronically, a copy of the within **MOTION TO DISMISS SUPERSEDING INDICTMENT** upon Assistant United States Attorney Sarah Kiewlicz via the ECF system.

Dated October 30, 2026

*/s/ Grainne Dunne*
Grainne Dunne